**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | : : : | |
| Plaintiff, | : | Case No. 1:18-cv-213 |
| vs. | : : | Judge Timothy S. Black |
| GEMMA POWER SYSTEMS, LLC, | : : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION (Doc. 24)**

This civil action is before the Court on Defendant Gemma Power Systems, LLC ("Gemma")'s motion to compel arbitration (Doc. 24) and the parties' responsive memoranda (Docs. 20, 23, 25, 28, 29). The Court held oral argument on Gemma's motion on October 30, 2018.

## I. BACKGROUND AND PROCEDURAL POSTURE

A brief overview of the parties, the dispute, and procedural history will assist the analysis of the issues presented byn this motion to compel arbitration. This litigation relates to the construction of the Middletown Energy Center (the "Project"), a natural gas electric generating plant located in Butler County, Ohio. Gemma was the general contractor for the Project. Gemma subcontracted with Intervenor-Plaintiff Kramig Industrial, Inc. ("Kramig Industrial") to perform insulation work on the contract. Kramig Industrial and Gemma entered into the relevant contract (the "Insulation Subcontract") in July 2017. (Doc. 24-1, Ex. 1).

The Insulation Subcontract required Kramig Industrial to secure a payment and performance bond. (Doc. 24-1, Ex. 1 at Article 15). Plaintiff Great American Insurance Company ("Great American") issued the surety bond on the Project (the "Bond") to Intervenor-Plaintiff Kramig, Inc., as principal, securing Kramig Industrial's performance of its work on the Project in favor of Gemma as named obligee. (Doc. 24-1 at Ex. 2). The penal sum of the Bond is the base Insulation Subcontract amount of $3,280,000. (*Id.* at ¶ 2).

Article 22 of the Insulation Subcontract includes an arbitration provision (the "Arbitration Provision") that provides:

> **22.1 NEGOTIATION OF DISPUTES AND DISAGREEMENTS**
> GPS and the Subcontractor will make reasonable, good faith efforts to amicably resolve any dispute or disagreement arising under this Subcontract or out of or in connection with the Work or the performance thereof. In the event of any dispute or disagreement arising out of or relating to the implementation or performance of this Subcontract that the Parties hereto have been unable to settle or agree upon within a period of ten (10) days after the dispute or disagreement arises, each Party shall thereupon nominate a senior officer of its management to meet at a mutually agreed time and place to resolve such dispute or disagreement, provided, however, that if the Parties are unable to agree upon a place for such meeting, it shall be held in Hartford, Connecticut.
>
> **22.2 BINDING ARBITRATION** If the senior officers of the Parties fail, for any reason, to resolve the dispute or disagreement within thirty (30) days after the dispute or disagreement arose, then the Parties agree that either Party may submit such dispute or disagreement to binding arbitration under the auspices of the American Arbitration Association. Unless the Parties otherwise agree, such arbitration shall be held in Hartford, Connecticut and shall be governed by the Construction Rules of the American Arbitration Association, subject to modifications contained in this Section 22.2. Discovery, if any, shall be by agreement of the Parties only. The Parties and the arbitrators shall use their best efforts to

conclude such arbitration within sixty (60) days after the submission of the matter to arbitration.

The Project experienced several setbacks that ultimately led to this litigation. Great American and the Kramig Entities[1] allege that Gemma caused or permitted delays on the Project that rendered it impossible for Kramig Industrial to complete its work on the Project. Gemma alleges that Kramig Industrial breached the Insulation Subcontract by abandoning the Project, failing to complete its scope of the work, and performed certain work defectively.

Great American brought this action on March 28, 2018 seeking declaratory judgment that: (1) the Bond is void and Great American has no liability to Gemma under the terms of the Bond (Doc. 1 at ¶ 52); (2) Gemma committed a material breach of the Bond (*Id.* at ¶ 57); (3) Great American's obligation under the terms of the Bond, if any, is limited to the penal sum (*Id.* at ¶ 60); (4) the Insulation Subcontract is subject to an upward adjustment to account for all delays and schedule compression due to Gemma's Project management and were beyond the control of Kramig (*Id.* at ¶ 64); and (5) Gemma's breach of the Insulation Subcontract relieves Great American of its performance obligation under the Bond. (*Id.* at ¶¶ 67–69). In response, on June 25, 2018, Gemma filed a counterclaim against Great American for breach of the Bond.

On May 23, 2018, Gemma filed an arbitration demand with the American Arbitration Association ("AAA") against Kramig Industrial, Inc. (as a party to the

---

[1] The "Kramig Entities" collectively refer to the Intervenor-Plaintiffs Kramig Industrial, Kramig, Inc., R.E. Kramig & Co., Inc., Kramig Corp., Diversified Industrial Capital Group, Inc., and South Mayne, LLC.

Insulation Subcontract), Kramig, Inc. (as a party to the Bond), and R.E. Kramig & Co. (as a party who sent invoices to Gemma related to the Project). The Kramig Entities filed a motion to intervene in this action on July 18, 2018. (Doc. 13). On July 27, 2018, Gemma filed a petition to compel arbitration in the U.S. District Court for the District of Connecticut in a case titled *Gemma Powers Systems, LLC v. Kramig Industrial, Inc., et al.*, Case no. 18-01256 (the "Connecticut action"). In response, the Kramig Entities filed for a temporary restraining order seeking to enjoin the Connecticut action until after this Court ruled on the Kramig Entities' motion to intervene and to enjoin Gemma from arbitrating the claims. (Doc. 16).

To their credit, after negotiation, the parties stipulated to the Kramig Entities intervening in this case and agreed to brief the issue of whether Gemma and the Kramig Entities agreed to arbitrate the current dispute. (Doc. 18). The Kramig Entities filed their intervening complaint on September 11, 2018, raising four causes of action against Gemma: (1) fraud in the inducement of the Insulation Subcontract; (2) fraud; (3) negligent misrepresentation; and (4) unjust enrichment all related to the work the Kramig Entities performed on the Project. (Doc. 19).

In the parties' stipulation, Gemma agreed that any AAA arbitration proceeding will take place in Ohio and that it would not proceed with any arbitration proceedings until the Court rules on whether any claims are arbitrable. (Doc. 18 at ¶ 2). The parties also agreed that, if the Court determines that the parties agreed to arbitrate their dispute, Great American shall be allowed to intervene in any arbitration. (*Id.* at ¶ 6).

## II.  STANDARD OF REVIEW

In considering a motion to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003); *see also Ackison Surveying, LLC v. Focus Fiber Solutions, LLC*, Case No. 2:15-cv-2044, 2016 WL 4208145 (S.D. Ohio Aug. 10, 2016) (following *Raasch*).  Therefore, the Court will look to the documents provided by the parties to lay the factual foundation and will construe those facts and any reasonable inferences that can be drawn therefrom in the light most favorable to the Kramig Entities.  Yet, in order to defeat a motion to compel arbitration, the nonmovant has the burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Danley v. Encore Capital Group, Inc.*, 680 Fed. Appx. 394, 397 (6th Cir. 2017) (quoting *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 899 (6th Cir. 2002).

When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural polices to the contrary").  Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in

5

favor of arbitration. *Stout*, 228 F.3d at 714. The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the Agreement, provided the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 3 thus "requires" a court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967); *see also Santos v. Am. Broad. Co.*, 866 F.2d 892, 894 (6th Cir. 1989) ("Where the parties to a contract that provides for arbitration have an arbitrable dispute, it is crystal clear that Congress has mandated that federal courts defer to contractual arbitration").

In considering a motion to compel arbitration under the FAA, a court has four tasks: (1) it must determine whether the parties agreed to arbitration; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable;[2]

---

[2] No federal statutory claims are asserted here.

and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, the court must determine whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714.

The Sixth Circuit applies "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960). It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *Id.* Indeed, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007). If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances. *Allied Steel & Conveyors*, 277 F.2d at 913.

### III. ANALYSIS

#### A. Gemma and Kramig Industrial agreed to arbitrate

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.,* 315 F.3d 619, 624 (6th Cir. 2003). Here, there is no dispute that the Arbitration Provision in the Insulation Subcontract is valid as to Gemma and Kramig Industrial. (Doc. 20 at 12; Doc.

24 at 7).  Instead, Kramig argues that only Kramig Industrial is subject to the arbitration provision -- not Kramig, Inc.; R.E. Kramig & Co., Inc.; Kramig Corp.; Diversified Industrial Capital Group, Inc.; and South Wayne, LLC -- and therefore those other entities cannot be forced to arbitrate their claims.  The Court will address this argument *infra* after determining whether this dispute falls within the substantive scope of the Arbitration Provision.

### B.  The Arbitration Provision applies to this dispute

The Court must determine whether the scope of the Arbitration Provision is broad enough to encompass the claims asserted by Kramig in this case.  Gemma contends that the Arbitration Provision's language that "any and all disputes or disagreements arising under the Subcontract or in connection with Kramig's scope of Work thereunder" clearly encompasses Kramig's tort claims asserted against Gemma.  (Doc. 24-1, Ex. 1 at Article 22).  Kramig contends that Gemma and Kramig Industrial only agreed to arbitrate disputes regarding the meaning of the Insulation Subcontract and the performance by either party under the agreement.  Kramig argues that its tort claims for fraudulent inducement, fraud, negligent misrepresentation, and unjust enrichment stand on their own and do not "arise under" the Insulation Subcontract and therefore are not arbitrable.

The Supreme Court has held that, as a matter of federal law, the FAA establishes that any doubts over the scope of arbitrable issues should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Therefore, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Moreover, the Supreme Court has held that "a claim of fraud in the inducement of the entire contract" is a matter to be resolved by the arbitrators, not the federal courts. *Prima Paint Corp.*, 388 U.S. at 402–04.

Here, Kramig argues that courts construe the language "arising under" to be narrower than a clause requiring arbitration of matters "arising out of" a dispute, and, therefore, Kramig's tort claims are not within the scope of the Arbitration Provision. (Doc. 20 at 13). District courts within the Sixth Circuit are divided on whether an arbitration provision including the phrase "arising under" is broad enough to reach claims for fraudulent inducement of a contract as a whole. In *General Power Products, LLC v. MTD Products, Inc.*, 2007 WL 901522 (S.D. Ohio March 27, 2007), the court followed decisions in the Second and Ninth Circuit to conclude that an arbitration provision with the language "if the Parties are unable to resolve a dispute hereunder" did not encompass a tortious interference claim. *Id.* at * 4. Yet in *BBS Techs., Inc. v. Remington Arms Co.*, 2005 WL 3132307 (E.D. Ky. Nov. 22, 2005), the court found that a party's tort claims were within the scope of an arbitration provision requiring "any dispute arising under this Agreement" to be arbitrated because the tort claims had their origins in the parties' commercial dealings and were dictated by the relevant contract. *Id.* at * 5.

The Sixth Circuit has found that the fraudulent inducement of a contract claim "arises out of" a contract, but has not decided whether it "arises under" a contract. *Highland Wellmont Health Network v. John Deere Health Plan, Inc.*, 350 F.3d 568, 578 n.6 (6th Cir. 2003). In *Highland*, the Sixth Circuit cited favorably to other circuits that, due to the strong federal policy in favor of arbitration, did <u>not</u> follow the Second and Ninth Circuit's limited reading of arbitration provisions. *See Battaglia v. McKendry,* 233 F.3d 720, 725 (3d Cir. 2000) ("arising under" and "arising out of" are given broad construction and encompass claims going to the formation of the underlying agreement); *Gregory v. Electro-Mech. Corp.,* 83 F.3d 382, 383-85 (11th Cir. 1996) (fraudulent inducement of contract within scope of arbitration clause covering "any dispute ... which may arise hereunder"); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 867 F.2d 809, 813 (4th Cir. 1989) (claim of fraudulent inducement fell within scope of arbitration clause covering any issue "believed to constitute a breach or violation" of the contract).

The Sixth Circuit has stated that the proper method of analysis to determine if a dispute is within the scope of an arbitration clause "is to ask if an action could be maintained without reference to the contract or relationship at issue." *Highland*, 350 F.3d at 576 (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)). Here, the Court finds that Kramig Industrial's claims against Gemma could not be maintained without reference to the Insulation Subcontract or the relationship at issue. Furthermore, the Arbitration Provision covers more disputes than just those "arising under" the Insulation Subcontract; it also covers disputes "in connection with Kramig's scope of

Work thereunder." (Doc. 24-1, Ex. 1 at Article 22). This plainly covers a broader scope of disputes than those "arising under" the Insulation Subcontract.

Accordingly, and recognizing that any doubts about the enforceability of arbitration agreements are resolved in favor of arbitration, *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir. 2014), the Court finds that Kramig Industrial's tort claims fall within the scope of the Arbitration Provision.

### C. Whether the conditions precedent to the Arbitration Provision have been met is to be determined by an arbitrator

The Kramig Entities argue that Kramig Industrial cannot be compelled to arbitrate the disputes at issue because the Arbitration Provision requires that senior officers of Gemma and Kramig Industrial attempt to settle any dispute prior to arbitration. (Doc. 20 at 15–16). Gemma contends that Kramig circumvented Gemma's efforts to settle the disputes. (Doc. 28 at 5–6).

Though the parties did not cite it, the Supreme Court has held that an arbitrator, rather than a court, must decide whether conditions precedent to arbitration have been met. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) (holding that arbitrator must decide whether a party's demand to arbitrate was time-barred); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration); *see also Capitol Indem. Corp. v. Dayton Bd. of Educ.*, 492 F. Supp. 2d 829, 835 (S.D. Ohio 2006) ("An arbitrator, rather than a court, however, must

decide the antecedent procedural questions, such as whether conditions precedent to arbitration have been met.").

Accordingly, the Court finds that whether Gemma met the conditions precedent of the Arbitration Provision is for the arbitrator to determine, not the Court.

### D. Ohio R.C. § 4113.62 does not void the Arbitration Provision

Next, Kramig contends that the Arbitration Provision is void and unenforceable under Ohio law, which law governs the Insulation Subcontract. (Doc. 24-1, Ex. 1 at Article 24.2). Ohio Revised Code § 4113.62 provides:

> Any provision of a construction contract ... for an improvement, or portion thereof, to real estate in this state that requires any litigation, arbitration, or other dispute resolution process provided for in the construction contract, subcontract, agreement, or understanding to occur in another state is void and unenforceable as against public policy ...."

O.R.C § 4113.62(D)(2). Kramig argues that the Arbitration Provision is void because it states that, unless the parties otherwise agree, the arbitration will take place in Hartford, Connecticut. However, Kramig is unable to identify any case law where an arbitration provision in a construction contract has been voided in its entirety due to a forum selection clause outside of Ohio. Instead, Kramig only cites cases in which courts have found forum selection clauses requiring dispute resolution outside of Ohio to be unenforceable. *See, e.g.*, *Michels Corp. v. Rockies Express Pipeline, L.L.C.*, 2015-Ohio-2218, 34 N.E.3d 160, ¶ 44 (7th Dist.) (finding that § 4113.62 renders foreign forum selection and choice of law clauses in construction contracts void and unenforceable); *Univ. Hospitals Health Systems, Inc. v. Pohl, Inc.*, 2016 WL 1389608 (N.D. Ohio Apr. 7,

2016) (denying defendant's motion to dismiss or transfer an action because the choice of law and forum selection provisions in the underlying contract were void pursuant to § 4113.62).

Here, Gemma has expressly agreed to arbitrate the dispute in Ohio (Doc. 18 at ¶ 2); it no longer seeks to arbitrate the disputes in Connecticut. Accordingly, because Gemma seeks to compel arbitration in Ohio, and does not seek to enforce the Connecticut-venue clause, the Court need not address whether the Connecticut-venue provision affects the enforceability of the Arbitration Provision. *See Taylor Bldg. Corp. v. Benfield*, 117 Ohio St.3d 352, ¶ 64 (declining to determine whether a Kentucky-venue provision affects the enforceability of an arbitration provision where party did not seek to enforce the Kentucky-venue provision).

### E. The Kramig Entities are bound to arbitrate

Having found that Kramig Industrial's claims against Gemma are arbitrable under the Arbitration Provision, the Court must determine if the other Kramig Entities that are not signatories to the Insulation Subcontract can be compelled to arbitrate. The Kramig Entities argue that, because only Kramig Industrial is a signatory to the Insulation Subcontract, only Kramig Industrial can be compelled to arbitrate the disputes at issue. Gemma emphasizes that the parties' stipulation that permitted the Kramig Entities to intervene in this action provided that this Court would determine whether all parties either arbitrate before the AAA or litigate before this Court. (Doc. 28 at 8–9). The Court finds Gemma's argument persuasive and agrees that the Kramig Entities can be compelled to arbitrate as signatories to the joint stipulation. (Doc. 18)

13

Moreover, within the Sixth Circuit, nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles. *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281 (6th Cir. 1990). "Five theories for binding nonsignatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Javitch,* 315 F.3d at 629 (citing *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

Here, the Court finds that the Kramig Entities can be compelled to arbitrate their disputes with Gemma under an equitable estoppel theory. "A nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a direct benefit from the contract while disavowing the arbitration provision." *Mac Tools v. Diaz*, 2012 WL 1409395, at \*5 (S.D. Ohio Apr. 23, 2012) (citing *Javitch*, 315 F.3d at 629). In *Mac Tools*, the court found that a wife who was not a signatory to an agreement between her husband and Mac Tools was bound by an arbitration provision in the agreement because she sought and expected benefit from her husband's agreement with Mac Tools and their fraudulent inducement claims against Mac Tools were substantively the same. *Id.* at \*5. The court found that it would be "inequitable" to permit the wife to litigate her claims in court when her husband, whose claims were indistinguishable from his wife's, was bound to arbitrate his claims against Mac Tools. *Id.* at \*6.

First, both Kramig, Inc., as the securing principal under the Bond that guaranteed Kramig Industrial's performance on the Insulation Subcontract, and R.E. Kramig & Co.,

as an entity that submitted invoices to Gemma for work under the Insulation Subcontract, clearly sought a direct benefit from the Insulation Subcontract. Moreover, similar to *Mac Tools*, each of the Kramig Entities seeks to make claims against Gemma that are substantively identical to Kramig Industrial's. All of the claims of the Kramig Entities included in the intervening complaint (Doc. 19) are alleged collectively and are the same claims as the Court has concluded that Kramig Industrial is bound to arbitrate. Although the Kramig Entities do not bring claims for breach of the Insulation Subcontract against Gemma, their claims would not exist but for the existence of the Industrial Subcontract between Gemma and Kramig Industrial. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen,* 206 F.3d 411, 418 (4th Cir. 2000) (nonsignatory could not avoid contractual arbitration provision where the contract "provide[d] part of the factual foundation for every claim asserted" against defendant). Accordingly, the parties' stipulation and the doctrine of equitable estoppel require the Kramig Entities to arbitrate their claims against Gemma.

### F. A stay of the proceedings is warranted

Section 3 of the FAA "requires" a court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration <u>to stay the court action pending arbitration</u> once it is satisfied that the issue is arbitrable under the agreement." *See, e.g., Prima Paint Corp.*, 388 U.S. at 400 (emphasis added). Here, the Court has found that the claims between Gemma and the Kramig Entities are arbitrable under the Arbitration Provision and that the parties have stipulated that Great American is

permitted to intervene in the arbitration between Gemma and the Kramig Entities; and

Great American represented in Court that it would participate.

Accordingly, a stay of all claims in this action is appropriate pending arbitration.

## IV.  CONCLUSION

For these reasons, Gemma's motion to compel arbitration (Doc. 24) is

**GRANTED**, and this civil action is **STAYED**.  The parties shall jointly notify the Court

promptly upon conclusion of the arbitration with respect to how they intend to proceed.

**IT IS SO ORDERED**.

Date:      11/15/19

Timothy S. Black
United States District Judge